**KAUFMAN DOLOWICH & VOLUCK LLP**
ELIZABETH WILLIAMS, ESQ., SBN 92374
ewilliams@kdvlaw.com
KATHERINE S. CATLOS, ESQ., SBN 184227
kcatlos@kdvlaw.com
URSULA D. TAMHANE, ESQ., SBN 240491
utamhane@kdvlaw.com
351 California Street, Suite 500
San Francisco, CA 94104
Telephone: (415) 402-0059
Facsimile: (415) 402-0679
Attorneys for Respondent MARTIN LUTHER KING, JR.-MARCUS
GARVEY SQUARE COOPERATIVE BOARD OF DIRECTORS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HO RIM KAM,<br><br>　　　　Petitioner,<br><br>vs.<br><br>MARTIN LUTHER KING, JR.–MARCUS GARVEY SQUARE COOPERATIVE BOARD OF DIRECTORS,<br><br>　　　　Respondent. | Case No.:　C07-4414 SBA<br><br>**NOTICE OF RESPONDENT'S MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RESPONDENT'S MOTION TO DISMISS FRCP 12(b)(6)**<br><br>Date:　　　　October 16, 2007<br>Time:　　·　1:00 p.m.<br>Courtroom:　3, 3rd Floor<br>Judge: Hon. Saundra B. Armstrong |

**NOTICE**

　　PLEASE TAKE NOTICE THAT on October 16, 2007 at 1:00 p.m. in Courtroom 3, 3rd Floor or as soon thereafter as the matter may be heard in the above-entitled Court, located at 1301 Clay Street, Oakland, Respondent Martin Luther King, Jr.- Marcus Garvey Square Cooperative Board of Directors ("Respondent") will move the Court to dismiss the Application for Peremptory Writ of Mandamus of Petitioner Ho Rim Kam ("Petitioner") pursuant to FRCP 12(b)(6) on the ground that Petitioner's Petition fails to state facts to create a claim upon which relief can be granted.

This motion is based on this Notice of Motion and the attached Memorandum of Points and Authorities and upon all pleadings, records and files in this action; and such other and further evidence and arguments as the Court may properly consider.

### RELIEF SOUGHT

Pursuant to FRCP 12(b)(6) Respondent requests that this Court dismiss Petitioner's Application for a Peremptory Writ of Mandamus commanding that he be reinstated to Respondent's Board as a Director or a Treasurer on the ground that Petitioner fails to state a cause of action upon which relief can be granted.

### POINTS AND AUTHORITIES

(Table of Contents and Table of Authorities follows)

NOTICE/MPA RE RESPONDENT'S MOTION TO DISMISS

# TABLE OF CONTENTS

I.    STATEMENT OF ISSUE TO BE DECIDED.................................................- 3 -

II.    STATEMENT OF FACTS .........................................................................- 3 -

   A.    GENERAL BACKGROUND.....................................................................- 3 -

     1.    The Martin Luther King, Jr.-Marcus Garvey Square Cooperative ...........- 3 -

     2.    HUD's Relationship to the Operation of MLK-MG................................- 4 -

     3.    The Occupancy Agreement....................................................................- 5 -

     4.    MLK-MG Bylaws Relevant to this Proceeding.......................................- 8 -

   B.    FACTUAL BASIS FOR PETITIONER'S REQUEST FOR RELIEF ............- 9 -

III.    LEGAL ARGUMENT................................................................................- 12 -

1. Petitioner Has No Clear, Present and Beneficial Right to the Relief Requested
Because He was Automatically Removed from the Board Due to his Delinquency
of More than Thirty (30) Days in Payment of Carrying Charges Pursuant to the
Article V Section 5 of the Bylaws. ................................................................- 13 -

2. Petitioner Has No Clear, Present and Beneficial Right to the Relief Requested
Because His Seat on the Board of Directors was Properly Declared Vacant
Pursuant to California Corporations Code Section 7221(b). ............................- 16 -

3. Petitioner Has No Clear, Present and Beneficial Right to the Relief Requested
Because He Was Properly Voted Out as Treasurer in Accord with
Applicable Bylaws. .....................................................................................- 18 -

4. Petitioner Has Failed to Show a Clear and Present Ministerial Duty on the- 18 -
Part of Respondent to Act in the Manner Requested. .....................................- 18 -

5. Petitioner Has an Adequate Remedy at Law Mandating Denial of the
Extraordinary Relief Requested. ..................................................................- 21 -

6. Public Policy Mandates that Petitioner's Request for Reinstatement to the
Board Must Be Denied.................................................................................- 21 -

IV.    CONCLUSION.........................................................................................- 22 -

i

# TABLE OF AUTHORITIES

**Federal Cases**

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) ............................................... 12

**State Cases**

*American Friends Service Committee v. Procunier*, 33 Cal.App.3d 252, 256 (1973) ........... 12-13

*Common Cause v. Board of Supervisors*, 49 Cal.3d 432 (1989) ................................. 18

*Ertman v. Municipal Court*, 68 Cal.App.2d 143 (1945) ........................................ 13

*Fuss v. Superior Court*, 228 Cal.App.3d 556 (1991) .......................................... 19

*Gaenslen v. Bd. of Directors of St. Mary's Hospital*, 185 Cal.App.3d 563 (1985) ............. 13

*Gonsalves v. Associacao Protectora*, 70 Cal.App.2d 252 (1945) ............................... 13

*Haase v. Diego Community College Dist.*, 113 Cal.App.3d 913 (1980) .......................... 13

*Lotus Car Limited v. Municipal Court*, 263 Cal.App.2d 264 (1968) ........................... 13

*Parker v. Bowron*, 40 Cal.2d 344, 351 (1953) ................................................ 13

*Peterson v. Dep't of Ecology*, 92 Wn.2d 306, 311 (1979) ..................................... 12

*Santa Clara County Counsel Attys. Assn. v. Woodside*, 7 Cal.4th 525, 539-540 (1994) ......... 12

*Santa Monica Mun. v. City of Santa Monica*, 191 Cal.App.3d 1538, 1547 (1987) ................ 12

**Federal Statutes**

Federal Rules of Civil Procedure 12(b)(6) ............................................ 3, 12, 16

United States Housing Act of 1937, 42 USC §1437 *et. seq* ..................................... 4

Title 24 Code of Federal Regulations, part 5 ................................................ 17

Title 24 Code of Federal Regulations §982.619(b). ............................................ 8

**State Statutes**

Code of Civil Procedure Section 1085(a) ..................................................... 12

California Code of Civil Procedure Section 1086 .......................................... 12, 21

California Corporations Code Section 7221(b) .......................................... 16, 17, 18

NOTICE/MPA RE RESPONDENT'S MOTION TO DISMISS

1 | **Other Authorities**

2 | 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 65, p. 702 ................................... 12

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE/MPA RE RESPONDENT'S MOTION TO DISMISS

I.    **STATEMENT OF ISSUE TO BE DECIDED**

By way of this motion, Respondent Martin Luther King, Jr.-Marcus Garvey Square Cooperative Board of Directors ("Respondent") requests that this Court dismiss Petitioner Ho Rim Kam's ("Petitioner") Application for Peremptory Writ of Mandamus ("Application") pursuant to Federal Rules of Civil Procedure 12(b)(6) because the Application and its supporting documents fail to state a claim upon which relief may be granted.

Per his Application, Petitioner seeks to be reinstated to Respondent's Board as a Director and its Treasurer. Petitioner's request to be restored to his position as a Director and Treasurer of Respondent Board must be dismissed because Petitioner has failed to show his clear, present and beneficial right to that position and has failed to show the required clear, present ministerial duty on the part of Respondent to reinstate him, as required by law.

As demonstrated herein, Petitioner's removal from Respondent Board was based on the United States Department of Housing and Urban Development's ("HUD") proper invocation of a mandatory corporate Bylaw that "automatically removed" Petitioner from the Board after he failed to timely repay rent arrearages arising from his failure to accurately report his assets when receiving Section 8 Housing Assistance Payments.

Although Petitioner's claim arises from HUD's alleged erroneous determination that he was in arrears of payment of monthly carrying charges, HUD is not a party to this action, and Petitioner has failed to show that HUD's conduct leading to his automatic removal from the subject Board of Directors was indeed "erroneous and unfounded" as alleged.

II.    **STATEMENT OF FACTS**

A.    **GENERAL BACKGROUND**

1.    **The Martin Luther King, Jr.-Marcus Garvey Square Cooperative**

The Martin Luther King, Jr.-Marcus Garvey Square Cooperative ("MLK-MG" or "Coop" or "Corporation") is a nonprofit corporation set up to provide housing for its members. The "operations of the housing corporation are controlled by the Board of Directors whose authority

is defined and limited by three key documents:  the Bylaws of the nonprofit corporation, the

Regulatory Agreement with the U.S. Department of Housing and Urban Development ("HUD"),

and the Occupancy Agreement." **Declaration of Kam, Exhibit B at page 2; Exhibit C at page**

**1.**  (The Declarations and Exhibits referenced herein are part of Petitioner's Application for

Peremptory Writ of Mandamus on file with the Court.)  The Coop's "Shareholder's Manual"

provides the policy, services and operation of the corporation and attaches copies of the Articles

of Incorporation, Bylaws, and MLK-MG Coop Information.  **Exhibit C to Kam Decl and the**

**HUD Regulatory Agreement.  Decl of Kam, Exhibit B, Table of Contents page 1 and 3.**

> ## 2.    HUD's Relationship to the Operation of MLK-MG

MLK-MG financed the real property with a mortgage from a private lending institution

with mortgage insurance provided by HUD under the provisions of the United States Housing

Act of 1937, 42 USC §1437 *et. seq.*:

> Subsidized cooperatives like MLK-MG sign a "Regulatory Agreement" with HUD.
> HUD insures the mortgage on the project.  Should the development default on its
> mortgage payments HUD could be required to pay the full amount owing to the
> mortgagor and would then own the project. Because it takes this risk, HUD
> exercises control over certain aspects of the corporation's affairs.  For example,
> HUD sets income limits for co-op residents to ensure that the project serves
> those families of modest means it was designed for, and places restrictions on
> family size and composition, carrying charges, methods of operation and sale
> of the project.  **Decl of Kam, Exhibit A, Article 19 of Occupancy Agreement at p.**
> **13;  Exhibit C, Section B, at page 2.**

Section 8 Housing Assistance Payments are available to "eligible" low and moderate

income families living at MLK-MG who will then pay no more than one-fourth of their income

for rent with the Federal Government paying the balance. To continue receiving Section 8

assistance, a member must (1) comply with HUD's income recertification requirements and (2)

must be current in his carrying charges.  **Decl of Kam, Exhibit B, "Section 8" at page 16.**

### 3.    The Occupancy Agreement

Each member of MLK-MG is required to sign an "Occupancy Agreement" (like a lease) on a standard form prepared by HUD. **Decl of Kam, Exhibit B at page 14.** The Occupancy Agreement outlines the responsibilities of shareholders and the corporation. **Decl of Kam, Exhibit C, at p. 2.**

HUD requires that the corporation assign units according to the size of the household (**Decl of Kam Exhibit A Article 4 at p. 6**); that only persons listed on a member's income certification (forms 3131 and 3132) live in a unit (**Decl of Kam, Exhibit B, "Additional Occupants" at p. 5**); and that, if applicable, only authorized occupants listed on the Certification and Recertification of Member Eligibility (HUD Form 50059) reside in the dwelling unit. **Decl of Kam Exhibit A, Occupancy Agreement, Article 3, "General Use Restrictions" at p. 4.**

"Carrying charges" or rents to cover project operation costs, debt service payments and deposits to reserves (**Decl of Kam Exhibit C, "Carrying Charges at p. 2-3**) must be approved by HUD (**Decl of Kam Exhibit A at p. 6**) a part of which on most units is paid by the Federal Government.[1] Once a year a member is required by law to recertify his income at which time the carrying charge due for the next 12 months is calculated. If a member fails to recertify when

---

[1]    MLK-MG entered into a Section Housing Assistant Payment Contract with HUD which provides that HUD will pay a portion of the carrying charge on behalf of qualified Members. Pursuant to said contract, HUD has approved the monthly Carrying Charge specified in Article 1 for the unit and has determined that the Member is eligible for Housing Assistance Payments in the amount shown in the Basic Occupancy Information page of this Agreement. In addition to the conditions recited above, the Member agrees that the following special conditions shall be applicable so long as the Member receives the benefit of Housing Assistance Payments:

    A.    Member agrees to pay, as Member's share, the amount calculated on the HUD-50059.

    B.    Member agrees to pay, in the event the amount of monthly Housing Assistance Payment is adjusted by HUD, the adjusted amount of the Housing Assistance Payment. **Decl of Kam Exhibit A, Occupancy Agreement Article 29 "Housing Assistance Payments" at p. 15.**

requested, he will be required to pay the fair market "carrying charge." **Decl of Kam Exhibit B,**

**"Income Recertification" at p. 11.**[2]  Members are also required to report any changes between

regularly scheduled recertifications and if a Member fails to do so the Corporation may increase

the Member's carrying charge to the HUD approved market carrying charge in accord with the

administrative procedures set forth in HUD's regulations. **Decl of Kam Exhibit A, Occupancy**

**Agreement Article 31 at p. 16.**  A member is in default if he fails to comply promptly with all

requests by the corporation or HUD for information and certifications in accordance with the

HUD Regulations and/or the corporation's policies. **Decl of Kam Exhibit A, Occupancy**

**Agreement Article 17,  Subsection (J) at p. 12.**

If a member submits false information on any application, certification or request for

interim adjustment, or does not report interim changes in family income, or other factors as

required by the Occupancy Agreement, and as a result, is charged a carrying charge less than the

amount required by HUD's carrying charge formulas, the Member agrees to **immediately and**

---

[2]   Every year the Corporation will request the Member to report the income and
composition of the Member's household and to supply any other information required by HUD
for the purposes of determining the Member's carrying charge and assistance payment, if any.
The Member agrees to provide accurate written statements in this information and to do so by the
date specified in the Corporation's request.  The Corporation will verify the information supplied
by the Member and use the verified information to re-compute the amount of the Member's
carrying charge and assistance payment, if any.

      A.    If the Member does not submit the required certification information by the date
             specified in the Corporation's request, the Corporation may impose the penalties
             listed below.

            1.  Require the Member to pay the higher, HUD approved market
               carrying charge ...

            2.  Implement any increase in carrying charge resulting from the
               recertification processing without providing the written notice
               otherwise required by Article 35 of this Agreement.

....

**Decl of Kam Exhibit A, Occupancy Agreement Article 30 "Regularly Scheduled**
**Recertifications" at p. 15.**

**forthwith upon written demand** reimburse the Corporation for the difference between the carrying charges the Member should have paid and the carrying charges the Member was charged. **Decl of Kam Exhibit A, Occupancy Agreement, Article 33 at p. 17.** [3]

---

[3]    Article 34 of the Occupancy Agreement further provides in part:
...
A.    Member agrees that the family disclosure of income, family composition and other eligibility requirements shall be deemed substantial and material obligations of his occupancy with respect to the amount of Housing Assistance Payments for which Member is eligible and in determining Member's share of the monthly Carrying Charge.
B.    Member agrees to comply promptly with all requests by the Corporation or HUD for information and certifications concerning the total carrying charge family income of the Member, the composition of the Member's family and other requirements for occupancy.
C.    Member agrees to report immediately in writing to the Corporation if any household Member moves in or out of the unit and an adult Member off the household who was reported as unemployed on the most recent certification or recertification (HUD 50059) obtains employment.  If the Member submits false information on any certification or recertification or request for an income interim adjustment or does not report interim changes in family income or other factors as required by this Article, and as a result, is charged a portion of the Carrying Charge less then the amount required by HUD's carry charge formula, the Members agrees to reimburse the Corporation for the difference between the Carrying Charge that should have been paid and the Carrying Charge actually charged.
D.    Member agrees that recertification of income shall be made to the corporation at least once a year.
E.    Member understands that Housing Assistance Payments and Member's share of the monthly Carrying Charge is subject to adjustment to reflect the income changes and agrees to be bound by such adjustment.
F.    Corporation and Member understand that, where by reason of an increase in income, Member is no longer entitled to Housing Assistance benefits, Member may continue to occupy the unit by paying the full monthly Carrying Charges established by the Corporation with the approval of HUD.
G.    Member agrees to reimburse HUD for any excess Housing Assistance Payments made by HUD during any period when an appropriate adjustment or termination of payments was not made for following reasons:
1.    Member's failure to report an increase in income to the Corporation ...;
2.    Member's misrepresentation of statements made in Member's application for Housing Assistance Payments, recertification of income or any other information furnished to the Corporation

- 7 -

A Member's Occupancy Agreement can only be terminated in accord with HUD Regulations, other laws and the terms of the Agreement. **Decl of Kam Exhibit A, Article 37 at p. 19.**

4.     <u>**MLK-MG Bylaws Relevant to this Proceeding**</u>

Per the Bylaws, a member may not vote if he is delinquent in payments owed to the corporation:

> "No member shall be eligible to vote or to be elected to the Board of Directors who is shown on the books or management accounts of the Corporation to be more than thirty (30) days delinquent in payments due the Corporation under his Occupancy Agreement". **MLK-MG Bylaws, ARTICLE IV. Section 7, Decl of Kam Exhibit N at p. 12.**

In addition, the MLK-MG Bylaws address "carrying charges" also known as rent for purposes of cooperative housing. Title 24 Code of Federal Regulations §982.619(b). Bylaw Article V, Section 5, Removal of Directors, provides for mandatory automatic removal of a member of the Board of Directors who is 30 days delinquent in paying his carrying charges:

> "The term of any Director who becomes more than thirty (30) days delinquent in payment of his carrying charges shall be automatically terminated and the remaining Directors shall appoint his successor as provided in Section 4, above". **Decl of Kam Exhibit N at p. 18.**

Further, Bylaw Article VI, Section 2, Election of Officers, provides that that Directors serve at the pleasure of the Board:

> "The officers of the Corporation shall be elected annually by the Board of Directors at the organization meeting of each new Board and shall hold office at the pleasure of the Board". **Decl of Kam Exhibit N at p. 21.**

---

or HUD; or,

3.  Member's failure to supply information requested by the Corporation or HUD.

**Decl of Kam Exhibit A, Occupancy Agreement at pages 17-18.**

Finally, Bylaw Article VI, Section 3, addresses Removal of Officers, providing that:

"Upon an affirmative vote of a majority of the members of the Board of Directors, any officer may be removed, either with or without cause, and his Successor elected at any regular meeting of the Board of Directors, or at any Special meeting of the Board called for such purpose". **Decl of Kam Exhibit N at p. 22.**

## B.  FACTUAL BASIS FOR PETITIONER'S REQUEST FOR RELIEF

From at least 1990 until March 15, 2007, Petitioner was the legal owner of real property located at 7524 Crawford Avenue, Skokie, IL (the "subject property.") **Decl of Kam, ¶ 13:4-5, 22-23.**  Petitioner lived on the subject property from 1990 to 1998.  **Decl of Kam, ¶ 13:5.** [4]

In 1998 Petitioner moved to San Francisco and married Chong Park.  **Decl of Kam ¶ 13:9-10.**  In November 2001, Petitioner and Ms. Park moved into the MLK-MG Cooperative Apartments pursuant to an Occupancy Agreement.  **Decl of Kam ¶ 2, Exhibit A to Decl.**

For the years 2001-2004, Petitioner and his wife received Section 8 housing assistance. Although Petitioner remained on the subject property's title, he did not report it as an asset on Section 8 application and certifications documents submitted for the years 2001-2004 so it was not taken account in determining his continuing eligibility for Housing Assistance Payments and computation of carrying charges.  **Decl of Kam ¶ 13:13-16.** [5]

---

[4]  Petitioner claims that in 1998 he honored an agreement he made with his former wife in 1991 (who died in 1992) and "gave" the subject property and their other assets to his children. **Decl of Kam ¶ 13:5-9.** Since 1998, Petitioner's son made all property tax and mortgage payments on the property. **Decl of Kam ¶ 13:10-12.**

[5]  As detailed above, pursuant to the Occupancy Agreement (**Exhibit A to Decl of Kam**) a determination of an applicant's eligibility for Section 8 housing assistance requires **yearly** completion of HUD Form 50059 which requires a list of all assets and income to determine one's eligibility for assistance, and if eligible, provides a calculation of the "carrying charges"/rent due and the amount an eligible tenant will be required to pay beyond the government subsidy amount. Because Petitioner admittedly failed to report the subject property worth $335,000 as an asset, its value was not taken into account in the determination of whether Petitioner and his wife were eligible for housing assistance payments and in the computation of

On September 13, 2005, Petitioner was elected to the MLK-MG Board of Directors and was elected to the office Board Treasurer. **Decl of Kam ¶ 3.**

In 2006, HUD discovered Petitioner's failure to report his ownership of the subject property for 2001-2004 while he and his wife received Section 8 payments. **Decl of Kam ¶ 13:16-18.**

On November 13, 2006, Petitioner was informed that the couple's HUD Form 50059's for the 2001-2004 period they received Section 8 assistance had been corrected to include the value of the unreported real property which had an appraised value of $355,500 in 2006 and no outstanding debt bringing the total amount due in back rent to $9,052. **Decl of Kam ¶ 3, Decl of Kam, Exhibit J.** Petitioner was also informed that "payment over an 18-month period of $503.00 per month beginning December 1, 2006" would be accepted. **Decl of Kam, Exhibit J.** Petitioner did not pay any portion of the back rent due on December 1, 2006. Petitioner did not pay any portion of the carrying charge demanded by December 31, 2006, the day Respondent submits was the day Petitioner's tenure ended as a Board member pursuant to Article IV, Section 7 of the MLK-MG Bylaws. **Decl of Kam Exhibit N at p. 12.** [6]

_____

their carrying charges for the years 2001-2004. Although Petitioner remained as the "owner"/legal owner on the title of the subject property until March 15, 2007 by which time the mortgage was fully paid, he claims that he failed to report it on HUD documents because he "received no income or any benefit from the property". **Decl of Kam ¶ 13.**

[6] Petitioner attempts to "excuse" his continuing violation of the Bylaws and Occupancy Agreement by his complete failure to pay ANY amount due based on his continuing requests between December 2006-January 2007 that the property management company "recalculate the amount of their past rent" (**Decl of Kam ¶ 14**) – wherein they requested that **admitted arrearages** be calculated based not on the 2006 appraisal of the subject property Petitioner submitted, but on appraisals for the years 2001-2004. However, by February 5, 2007 (6 weeks after the first demand for payment by letter dated November 13, 2006) Petitioner had still not presented ANY of the "promised" appraisals for the property for the relevant years despite the November 2006, demand and at least one follow up call. **Exhibit K to Decl of Kam.** By February 23, 2007 Petitioner had still not paid ANY part of the overdue "carrying charges" nor had he provided any of the long promised appraisals prepared by a licensed appraiser reflecting the value of the subject property for the years 2001-2004. **Decl of Kam, Exhibits H and I.**

NOTICE/MPA RE RESPONDENT'S MOTION TO DISMISS

By letter dated February 5, 2007, Petitioner was told "if you dispute what is owed please forward the additional appraisals to me by February 23, 2007." **Decl of Kam, Exhibit K**.  But February 23, 2007 passed and Petitioner and Ms. Park had still not provided appraisals for the property for 2001-2004 nor paid ANY past due rent. **Decl of Kam Exhibits H and I**. [7]

Thus, on March 5, 2007, HUD informed the Respondent Board and the property management company that Petitioner and Ms. Park "currently owe past due carrying charges of $9,052," that they were in "delinquency" and that Petitioner "can no longer serve on MLK-MG Board of Directors pursuant to the Bylaws which provide that "any Director who becomes more than thirty days delinquent in payment of his carrying charges shall be automatically terminated." HUD also demanded that the Board take immediate action to bring the project into compliance with the Bylaws. **Decl of Kam ¶ 6, Exhibit D**

On March 7, 2007, over 90 days after being informed of his arrearage on November 13, 2006, Petitioner tendered the $9,052. **Decl of Kam ¶ 16**. [8]

Petitioner claims that on March 13, 2007, acting on the "erroneous and unfounded statements" set forth in the March 5, 2007 letter from HUD (**Decl of Kam Exhibit D**),

---

[7]    Memorandum to the Board dated February 23, 2007 (**Decl of Kam Exhibit I**) informs that Petitioner had failed to report a second residence (the subject property) and that he "had until February 23, 2007 to produce new appraisals" as they disputed her initial calculations. Although the property management company had agreed to recalculate what was owed based on yearly appraisals, "however they were never produced." **Decl of Kam Exhibit I**

[8]    Sidestepping HUD's position letter of March 5, 2007, applicable MLK-MG Bylaws and the undisputed fact that Petitioner only owed "carrying charge" arrearages due to his failure to report an asset worth over $300,000 to obtain Section 8 housing assistance he was not otherwise eligible to receive in the first place, Petitioner puts a "political spin" on his misdeeds by arguing that it was his analysis of a refinancing proposal for rehabilitation and property conditions that prompted "a faction of the Board who disagreed with him to exclude him from Board deliberations." Thus, Petitioner claims that he paid the "entire amount due" for overdue "carrying charges" four months after first assessed on March 7, 2007, instead of monthly installments, based on his fear that "other Board members were pressuring [property management company's] Loren Sanborn to improperly remove" him from the Board. **Decl of Kam ¶ 16**.

Respondent Board voted 3-2 to remove him as Director and Treasurer by three members who disagreed with Petitioner regarding a pending Refinancing Proposal. **Decl of Kam ¶ 7, 11.**

Thereafter and "to make it abundantly clear" that he has no interest in the subject property, on March 15, 2007 Petitioner finally conveyed legal title to the subject property to his son and daughter. **Decl of Kam ¶ 13: 21-23.**

## III.    LEGAL ARGUMENT

The Court must grant a motion to dismiss pursuant to FRCP 12(b)(6) if it appears beyond a doubt that Petitioner "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Superior Court civil rules apply to mandamus actions. *Peterson v. Dep't of Ecology*, 92 Wn.2d 306, 311 (1979).

California's Code of Civil Procedure Section 1085(a) provides that a writ of mandamus may issue to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled and from which the party has been unlawfully precluded by the respondent. To prevail, Petitioner must establish he has a clear, present and beneficial right to performance of respondent's duty. *Santa Clara County Counsel Attys. Assn. v. Woodside,* 7 Cal.4th 525, 539-540 (1994); *Santa Monica Mun. Employees Assn. v. City of Santa Monica,* 191 Cal.App.3d 1538, 1547 (1987). California Code of Civil Procedure Section 1086 also provides that the writ should issue in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law.

Thus, two requirements must be met before mandamus will issue: "(1) A clear, present (and usually ministerial) duty on the part of the respondent and (2) A clear, present and beneficial right in the petitioner, to the performance of that duty." 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 65, p. 702.

In addition, the writ must be necessary to enforce or protect a specific legal right that is clear, present, certain and substantial. *American Friends Service Committee v. Procunier*, 33

Cal.App.3d 252, 256 (1973). A writ will only be granted if necessary to protect a substantial right and it is shown that substantial damage will be suffered if the writ is denied. *Parker v. Bowron*, 40 Cal.2d 344, 351 (1953). A writ of mandate is a writ of discretion and not of right. *Ertman v. Municipal Court*, 68 Cal.App.2d 143 (1945).

### 1. Petitioner Has No Clear, Present and Beneficial Right to the Relief Requested Because He was Automatically Removed from the Board Due to his Delinquency of More than Thirty (30) Days in Payment of Carrying Charges Pursuant to the Article V Section 5 of the Bylaws.

Petitioner has the burden of proving that he or she is entitled to mandamus relief. *Haase v. Diego Community College Dist.*, 113 Cal.App.3d 913 (1980). The burden is on Petitioner to prove every fact that forms the basis of his claim that he has a clear and present right to the relief requested. *Lotus Car Limited v. Municipal Court*, 263 Cal.App.2d 264 (1968); *Gonsalves v. Associacao Protectora Uniao Maderiense Do Estado Da California*, 70 Cal.App.2d 252 (1945); *Gaenslen v. Board of Directors of St. Mary's Hospital and Medical Center*, 185 Cal.App.3d 563 (1985).

In *Gonsalves, supra*, Petitioner wrote a letter to another lodge member in which he referred to a lodge officer as a thief. Petitioner was expelled from the lodge pursuant to a bylaw which provided for expulsion of a member who defamed another member. The Court upheld denial of Petitioner's request for a writ of mandate to restore him to lodge membership on the grounds that (1) the Board of Directors had jurisdiction to act based on the interpretation of the constitution and bylaws of the lodge which had been circulated and provided for the action taken, and, that (2) Petitioner had admitted that he had sent the letter which contained a non-privileged statement, which as a matter of law, defamed an officer.

Similarly, in *Gaenslen, supra*, the trial court's denial of relief by way of writ of mandate was affirmed on appeal where a review of the record disclosed that the physician's expulsion

from hospital privileges was appropriate based on his providing inadequate patient care in violation of hospital bylaws.

Although Petitioner bases his claim on the assertion that HUD "erroneously" determined that he was in arrears of "carrying charges," Petitioner fails to present any facts in support of the argument that HUD was indeed wrong.

In addition, in the present case, Petitioner's request for reinstatement to Respondent Board must be denied because he has not shown that "he has a clear and present right to reinstatement." In fact, the face of the Petition requires a conclusion that the converse is true:

Petitioner admits that he and his wife failed to report his ownership of real estate on their application for Section 8 Housing Assistance Payments for the years 2001-2004. Their failure to accurately report assets resulted in Petitioner's receipt of payments he and his household were not eligible to receive, and that he was required to repay pursuant to the Occupancy Agreement. Petitioner admittedly received a written demand for payment on November 13, 2006, requesting that the entire sum of $9,052 or agreed to monthly payments be paid on December 1, 2006. Petitioner **admittedly** failed to make ANY payment by December 1, 2006; Petitioner **admittedly** failed to make ANY payment by December 31, 2006, the 30th day on which payment was due at the latest, placing himself in delinquency of more than 30 days for carrying charges for years 2001-2004.

Significantly, Petitioner admittedly failed to make ANY payments to reimburse the Corporation and HUD the difference between the carrying charges he should have paid and the carrying charges he was charged for 2001-2004 **immediately and forthwith upon written demand** as required by Article 33 of the Occupancy Agreement, which he agreed to be bound by. Further, Petitioner's failure to comply with the Bylaws triggered his "automatic removal" from the Board as of January 1, 2007, pursuant to HUD's demand and the mandatory provision of Article IV, Section 7 of the Bylaws.

Moreover, Petitioner's "excuses" for his failure to repay monies owed are without merit.

First, Petitioner's contention that his removal from the Board was wrongful because he was "never in arrears of rent" because he paid his monthly "carrying charge" from October 2006 to April 2007, is irrelevant given that the period at issue herein is 2001-2004, not 2006-2007.

Second, Petitioner's argument that HUD's conclusion that he was in arrears of rent was erroneous and unfounded is belied by the present record wherein Petitioner admits that as of March 5, 2007, he had been aware of claimed arrearages for 2001-2004 since at least November 13, 2006, **and only disputed the amount owed.** Notably, despite Petitioner's knowledge of arrearages since as early as November 13, 2006, he (1) made no payments and (2) failed to provide appraisals by a licensed appraiser for the years 2001-2004 even though provided additional time to do so.

Third, while acknowledging that he was required to repay the money HUD paid on his behalf due to his failure to accurately report assets while receiving Section 8 payments, Petitioner argues first that the amount charged was "too large an amount." Petitioner next inconsistently maintains that the $9,052 assessed for unreported income was "not really due" because it had not been "posted" to his account rendering February 28, 2007 "the earliest date the amount could have been due." This convoluted argument is nonsense – merely because a debt is not "posted" does not mean it is not owed. In addition, the record confirms that the $9,052 was not "posted" to give Petitioner time to fulfill his now known-to-be-false promise to provide appraisals for the years 2001-2004 which were never provided. Thus, Petitioner's argument is especially disengenuous given that it was the grant to Petitioner of additional time to provide appraisals for the years 2001-2004 so he could try to realize the possible benefit of a lower assessment that delayed the "posting" he now claims was denied to him! The lack of merit of Petitioner's "argument" is further underscored by the fact that when Petitioner first tendered

payment for "carrying charge" arrearages, **first calculated in November 2006 on March 7,**

**2007, his account had still not been formally posted. Decl of Kam Exhibit E.** Clearly,

Petitioner did not require "posting" to know he was required to repay monies wrongfully paid on

his behalf due to his own failure to accurately report assets after all!

Accordingly, Petitioner's request for reinstatement to the Board of Directors must be

dismissed because he has failed to and cannot show that he has a clear and present right to the

equitable relief requested mandating grant of this Rule 12(b)(6) motion.

**2. Petitioner Has No Clear, Present and Beneficial Right to the Relief Requested Because His Seat on the Board of Directors was Properly Declared Vacant Pursuant to California Corporations Code Section 7221(b).**

California Corporations Code Section 7221(b) provides that a Board can declare a

position on a Board of Directors vacant in certain circumstances:

> (b) As provided in paragraph (3) of subdivision (c) of Section 7151, the articles or bylaws may prescribe the qualifications of the directors. The board, by a majority vote of the directors who meet all of the required qualifications to be a director, may declare vacant the office of any director who fails or ceases to meet any required qualification that was in effect at the beginning of that director's current term of office.

As pertinent hereto Article IV, Section 7 of the MLK-MG Bylaws, in effect in 2005

when Petitioner was elected to the Board of Directors, provides in pertinent part that:

> "No member shall be eligible to ... be elected to the Board of Directors who is shown on the books or management accounts of the Corporation to be more than thirty (30) days delinquent in payments due the Corporation under his Occupancy Agreement". **Decl of Kam Exhibit N at p. 12.**

Petitioner admits that during the years 2001 through 2004, he failed to accurately report

his real estate assets. This resulted in Petitioner and his household receiving Section 8 Housing

Assistance Payments that they were not entitled to receive. Petitioner also admits that he owed

back rent for the assistance payments made on his behalf during 2001-2004 which he would not

otherwise have received but for his failure to accurately report his assets – the difference

between what he should have paid in carrying charges if his reporting had been accurate and that

which he was charged for the years 2001-2004 which omitted his ownership of valuable real

estate when he submitted his certification and when he thereafter submitted multiple

recertifications (for three years).

Thus, in September 2005, when Petitioner was elected to the Board of Directors he was

in arrears of rents due for the period from 2001 through 2004. That Respondent and HUD did

not know of Petitioner's arrearage in carrying charges does not render Petitioner any less in

arrears. Respondent's and HUD's lack of knowledge is of no consequence where that lack of

knowledge is directly attributable to Petitioner's failure to disclose and/or conceal the asset in

violation of Article 34 of the Occupancy Agreement and HUD's reporting requirements. Title

24 Code of Federal Regulations, part 5.

Once Respondent and HUD discovered Petitioner's arrearage and that Petitioner was not

in compliance with Article IV, Section 7 of the MLK-MG Bylaws in 2005 when he was first

elected to the Board (i.e. Petitioner was more than thirty (30) days delinquent in payments due to

Corporation and HUD under his Occupancy Agreement for and during the years 2001, 2002,

2003 and 2004), the Board had the authority to declare his office vacant for Petitioner's admitted

failure to "meet any required qualification that was in effect at the beginning of that director's

current term of office" pursuant to California Corporations Code Section 7221(b).

Petitioner fails to state a claim upon which relief can be granted because he has not

shown that he had the qualifications required to assume a Board seat in September, 2005 because

he was then more than thirty (30) days in arrears for back rents due for the years 2001-2004 in

violation of Article IV, Section 7 of the Bylaws.  Thus, Petitioner's seat on the Board was

properly declared vacant in March, 2007 pursuant to Corporations Code Section 7221(b).

### 3. Petitioner Has No Clear, Present and Beneficial Right to the Relief Requested Because He Was Properly Voted Out as Treasurer in Accord with Applicable Bylaws.

Article VI, Section 2, of the MLK-MG Bylaws provide that a Board member holds office

"at the pleasure of the Board".  **Decl of Kam Exhibit N at p. 21.**  Article VI, Section 3, of the

relevant Bylaws provides that "upon an affirmative vote of a majority of the members of the

Board of Directors, any officer may be removed with or without cause."  **Decl of Kam Exhibit**

**N at p. 22.**

On March 13, 2007 by a 3-2 vote of the Board of Directors, Petitioner was removed as a

Director and Treasurer of the Board.  Thus, even if Petitioner could show that he is entitled to

reinstatement as a member of the Board of Directors (which Respondent maintains that he

cannot), the moving papers confirm that Petitioner who only served at the "pleasure of the

Board" was properly voted out of his position as Board Treasurer by a majority vote of Board

members on March 13, 2007 in accord with the Bylaws. Accordingly, the Petitioner fails to state

a claim upon which relief can be granted and his request for reinstatement to the office of

Treasurer of the Board must be dismissed.

### 4. Petitioner Has Failed to Show a Clear and Present Ministerial Duty on the Part of Respondent to Act in the Manner Requested.

Although mandamus may be used to compel nongovernmental bodies or their officers to

perform their legal duties, it may not be used to control an exercise of discretion, that is, to

compel an official to exercise discretion in a particular manner. *Common Cause v. Board of*

*Supervisors* 49 Cal.3d 432 (1989).  The duty sought to be compelled must usually be a

ministerial duty. *Fuss v. Superior Court*, 228 Cal.App.3d 556 (1991). Here, Petitioner must demonstrate that the duty he seeks to enforce does not involve judgment or discretion.

In the present case, Petitioner's and his wife's failure to pay ANY amount due despite various extensions of time and concessions, caused HUD to declare on March 5, 2007 that Petitioner owed past due carrying charges, was delinquent and thus, could "no longer serve on the MLK-MG Board of Directors" pursuant to Respondent Bylaws which provided that "any Director who becomes more than thirty days delinquent in payment of his carrying charges shall be automatically terminated." HUD also demanded that the Board put the project in compliance with its Bylaws. In response to HUD's March 5, 2007 decision based on the Bylaws and demand that the Board take immediate action to bring the project into compliance with the bylaws, on March 13, 2007 and by a vote of 3-2 the Board voted to remove Petitioner as Director and necessarily as Treasurer of the Board. **Decl of Kam at ¶¶ 7, 11.**

Although at the heart of Petitioner's claim is the assertion that HUD's determination was "erroneous and unfounded", he cites no authority that prohibits HUD from making the determination it made with regard to Petitioner's status as a member of the Board.

In addition, Petitioner cites no authority for the proposition that Respondent should have refused to act in accord with HUD's directive. In fact, the converse is true – Respondent is **required** to follow HUD's directive to comply with the Bylaws. [9]

---

[9] The "operations of the housing corporation are controlled by the Board of Directors whose authority is defined and limited by three key documents: the Bylaws of the Corporation, the Regulatory Agreement with the U.S. Department of Housing and Urban Development (HUD) and the Occupancy Agreement." **Decl of Kam, Exhibit B at page 2; Exhibit C at page 1.** Moreover, Article VII, Section 1 of the project Bylaws specifically provides that:

"The management, operation and control of the affairs of the Corporation shall be subject to the rights, powers, and privileges of the Federal Housing Administration pursuant to a Regulatory Agreement between the Corporation and the Federal

As detailed above, MLK-MG signed a "Regulatory Agreement" with HUD wherein HUD insured the mortgage on the project. Because HUD "takes the risk" and is required to pay the full amount owing on the mortgage if the development defaults on its mortgage, HUD exercises control over the corporation's affairs by setting income limits for residents to ensure that the project serves families of modest means it was designed for, places restrictions on family size and composition, sets and approves carrying charges due, methods of operation of the project, approves carrying charges owed, etc. **(Decl of Kam, Exhibit A, Article 19 of Occupancy Agreement at p 13; Exhibit C, Section B, at page 2).** Inherent in the foregoing described HUD powers is the ability to require a corporation to comply with mandatory provisions of its Bylaws, declare a member in default due to his failure to provide accurate certifications and re-certifications, and otherwise exercise authority to regulate the ultimate fiscal operation and viability of the project which mortgage it insures.

Petitioner provides no authority for the ability of the Board to simply ignore HUD's directives because none exists. In fact, given the circumstances herein, at the most Respondent's decision to adhere to HUD's directive was one of judgment and "discretionary" based on the Board's interpretation of HUD's authority to invoke Bylaws' provisions and require the Board to be in compliance with the Bylaws.

In further contrast, the MLK-MG Bylaws provide no mechanism to reinstate Petitioner to the Board once his term was declared "automatically terminated" under the project Bylaws and HUD's declaration that Petitioner could no longer serve as a Director due to his violation of

Housing Administration. The Corporation is bound by the provisions of the Regulatory Agreement which is a condition precedent to the insurance of a mortgage of the Corporation on the project." **Decl of Kam Exhibit N at p. 23.**

NOTICE/MPA RE RESPONDENT'S MOTION TO DISMISS

HUD regulations and his Occupancy Agreement.   Petitioner has failed to provide any basis for his request that Respondent be compelled to act beyond its authority under the relevant Bylaws. Thus, (1) the Board's exercise of its discretionary duty in adhering to HUD's directive; (2) the failure of the Bylaws to provide a mechanism for Petitioner's reinstatement, coupled with (3) Petitioner's failure to identify a "ministerial duty" requiring the Board to act in the manner requested, compels dismissal of Petitioner's application for a writ of mandamus commanding his reinstatement to the Board under the present facts for failure to state a claim.

### 5. Petitioner Has an Adequate Remedy at Law Mandating Denial of the Extraordinary Relief Requested.

A writ of mandate will not be granted where Petitioner has an adequate remedy at law. California Code of Civil Procedure Section 1086.  Petitioner acknowledges that his failure to report his ownership of real property during the years 2001-2004 resulted in his receipt of Section 8 Housing Assistance Payments that he was not eligible to receive.  Petitioner does not dispute that he owed past due rent/rent arrearage for the years 2001-2004.  However, Petitioner disputes the amount owed which he characterizes "as too large an amount" and ultimately paid the sum demanded under protest.

Petitioner's failure to meet his burden that he is entitled to the equitable relief requested requires an examination of the "heart" of Petitioner's claim – that he was been over-charged for back rent.  Petitioner has an adequate remedy at law to address his true grievance – he can bring a civil action for damages to obtain return of monies he claims he was wrongfully over-charged.

### 6. Public Policy Mandates that Petitioner's Request for Reinstatement to the Board Must Be Denied.

Balancing the equities and public policy require that Petitioner's request for relief be dismissed because Petitioner has come to Court with unclean hands and is not entitled to

equitable relief because:

1. Petitioner failed to accurately disclose his assets and thereby received Section 8 Housing Assistance he was not entitled to receive;

2. Petitioner failed to promptly and timely repay monies he owed to HUD for funds expended on his behalf he was not entitled to in the first place;

3. Petitioner revealed himself to have, at worst, fraudulently concealed assets to obtain benefits to which he was not entitled, or at least, failed to take care to assure that his financial disclosures were truthful and accurate precluding his return to a position of trust on the Coop's Board of Directors; and

4. Petitioner now claims to have "misunderstood" for over four (4) years simple HUD reporting requirements and did not bother to seek clarification. Thus, Petitioner is clearly not worthy of being entrusted with the sacred duty to assure the continuing viability of a Coop formed to assist low and modest income individuals in obtaining and maintaining decent housing.

As set forth above, a writ of mandate is a writ of discretion and not of right. To grant Petitioner equitable relief despite his clear and undisputed past violations of law would allow him to profit from his own misconduct at worst, and negligence at best, in his application for and receipt of federal funds pursuant to the Section 8 Housing Assistance Program.

Accordingly, Petitioner's request for writ of mandate must be dismissed because Petitioner has failed to state a state a claim upon which relief can be granted.

## IV. CONCLUSION

For all of the foregoing reasons, Respondent respectfully requests that Petitioner's application for a writ of mandamus reinstating him as Director and Treasurer of the MLK-MG

NOTICE/MPA RE RESPONDENT'S MOTION TO DISMISS

Board of Directors be dismissed for failure to state a cause of action upon which relief can be granted.

Respectfully submitted,

DATED:  September 4, 2007        **KAUFMAN DOLOWICH & VOLUCK LLP**

Elizabeth Williams, Esq.
Katherine S. Catlos, Esq.
Attorneys for Respondent MARTIN LUTHER
KING, JR.-MARCUS GARVEY SQUARE
COOPERATIVE BOARD OF DIRECTORS

NOTICE/MPA RE RESPONDENT'S MOTION TO DISMISS