1
2  **KAUFMAN DOLOWICH & VOLUCK LLP**
   ELIZABETH WILLIAMS, ESQ., SBN 92374
   ewilliams@kdvlaw.com
3  KATHERINE S. CATLOS, ESQ., SBN 184227
   kcatlos@kdvlaw.com
4  URSULA D. TAMHANE, ESQ., SBN 240491
   utamhane@kdvlaw.com
5  351 California Street, Suite 500
6  San Francisco, CA 94104
   Telephone:  (415) 402-0059
7  Facsimile:  (415) 402-0679
8  Attorneys for Respondent MARTIN LUTHER KING, JR.-MARCUS
   GARVEY SQUARE COOPERATIVE BOARD OF DIRECTORS
9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12  HO RIM KAM,                        )  Case No.:    C 07 4414 SBA
                                       )
13            Petitioner,              )  **RESPONDENT'S OPPOSITION TO**
                                       )  **MOTION TO REMAND PER 28 U.S.C.**
14       vs.                           )  **SECTION 1447**
                                       )
15  MARTIN LUTHER KING, JR.-MARCUS     )  Date   :  October 16, 2007
    GARVEY SQUARE COOPERATIVE          )  Time   :  1:00 p.m.
16  BOARD OF DIRECTORS,                )  Court  :  Courtroom 3, 3rd Floor
                                       )  Judge  :  Hon. Saundra B. Armstrong
17            Respondent.              )
                                       )
18                                     )
                                       )
19  _____)

20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................1

II.   STATEMENT OF FACTS.....................................................2

   A.  HUD exercises control over certain aspects of the Cooperative's affairs such that the affairs of the Cooperative are subordinate to the Rights of the Federal Housing Administration..............................................................................2

   B.  Petitioner applies for and receives Section 8 Housing Assistance Payments without disclosing his assets............................................................................7

   C.  HUD demands that Respondent Board take immediate action ................................8

   D.  Petitioner claims that HUD is wrong.............................................................8

III.  LEGAL ARGUMENT........................................................9

   A.  Removal to federal court is appropriate because the federal court has jurisdiction to resolve disputes arising from HUD's control of operations at the Cooperative.................9

       1.    Petitioner's claim, as articulated in his Application, challenges a federal agency decision............................................................................9

       2.    Petitioner's claim turns on the validity of a federal agency determination.........10

   B.  Removal to federal court is appropriate because Petitioner's claim implicates a substantial federal interest which a federal court may evaluate without upsetting the balance between federal and state law...............................................................................12

   C.  Removal to federal court is appropriate because federal courts have historically exercised federal question jurisdiction over cases which present issues arising under the National Housing Act.................................................................................14

   D.  The crux of Petitioner's claim is inextricably linked to a federal agency decision.........15

   E.  Petitioner is not entitled to attorney's fees in the event this court remands this case because Respondent Board had an objectively reasonable basis for removal of this case to federal court .................................................................................18

IV.   CONCLUSION.................................................................19

# TABLE OF AUTHORITIES

**Federal Statutes**

26 U.S.C. Section 6335.................................................................................12

28 U.S.C. Section 1331....................................................................................9

28 U.S.C. Section 1441....................................................................................9

42 U.S.C. Section 1437.......................................................................1,2, 9, 10

**Federal Cases**

*Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.*
986 F.2d 476 (Fed Cir 1993)..........................................................................11

*Balcorta v. Twentieth Century-Fox Film Corp.*
208 F.3d 1102 (9th Cir 2002).........................................................................19

*Bloodworth v. Oxford Village Townhouses, Inc.*
377 F. Supp 709 (1974)............................................................................ 10, 15

*Emrich v. Touche Ross & Co.*
846 F.2d 1190 (9th Cir.1988)..........................................................................9

*Franchise Tax Board v. Construction Laborers Vacation Trust*
463 U.S. 1 (1983)...........................................................................................11

*Geneva Towers Tenants Organization v. Federal Mortgage Investors*
504 F.2d 483 (1974).......................................................................................15

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*
545 U.S. 308 (2005).......................................................................11, 12, 14

*Keller v. Kate Maremount Foundation, et. al.*
365 F.Supp. 798 (1972).............................................................................14, 15

*Martin v. Franklin Capital Corp.*
546 U.S. 132 (2005).......................................................................................18

*Merrill Dow Pharmaceuticals, Inc. v. Thomson*
478 U.S. 804 (1986).......................................................................................11

*Smith v. Kansas City Title & Trust Co.*
255 U.S. 180 (1921).......................................................................................11

## I. INTRODUCTION

Federal jurisdiction is proper in the instant case because Petitioner Ho Rim Kam's Application for Peremptory Writ of Mandamus raises a federal issue.

The federal issue in this matter is whether, in complying with a <u>unilateral</u> directive issued by the United States Department of Housing and Urban Development (HUD), Respondent properly removed Petitioner from its Board of Directors.

A court cannot determine whether the Martin Luther King, Jr.-Marcus Garvey Square Cooperative's Board of Directors ("Board") acted appropriately without taking into consideration the fact that Respondent Board is required to comply with federal directives in order to maintain funding for the Martin Luther King, Jr.-Marcus Garvey Square Cooperative (the "Cooperative," "Corporation"), a nonprofit housing corporation which HUD subsidizes under the United States Housing Act of 1937, 42 USC §1437, *et. seq.*  Here, HUD issued a determination to Respondent Board that Petitioner be automatically removed from the Cooperative's Board of Directors because he was delinquent on his rent payments.  Acting in accordance with this directive, Respondent removed Petitioner from his position.  Where, as here, Petitioner challenges a decision made in response to a federal directive, federal jurisdiction must prevail.

Petitioner's motion to remand this action to state court is, essentially, a cunning attempt to force a court to analyze this dispute in a vacuum.  Indeed, in his Declaration in support of his Application for Peremptory Writ of Mandamus, Petitioner himself acknowledges that Respondent only made its decision to remove him after receiving a letter from HUD advising that specific action.  Petitioner writes, "acting apparently on the erroneous statements in Ms. Corcoran's [a HUD employee's] letter…a member of the Board moved to remove me from the Board…."  Petitioner's Declaration concedes the significance of HUD's directive and wholly undermines the notion (as articulated in Petitioner's Motion to Remand) that this dispute is merely a "question of interpretation of the [Cooperative's] by-laws and application of the California Corporations Code."

To summarize, Respondent Board removed this action to federal court because resolution

RESPONDENT'S OPPOSITION TO MOTION TO REMAND

of Petitioner's claim inherently turns on federal questions and implicates significant federal issues, including but not limited to: (1) HUD's authority to and the propriety of its determination that Petitioner was delinquent in carrying charges (computed pursuant to HUD guidelines); (2) HUD's authority to invoke the mandatory Cooperative by-law provision requiring a delinquent Director's automatic removal from Respondent Board; (3) HUD's authority to direct Respondent Board to act pursuant to the Cooperative's by-laws; and (4) Respondent Board's duty to adhere to HUD's directives.

Because resolution of Petitioner's claim turns on a determination of whether HUD's determinations were "erroneous and unfounded" as Petitioner now alleges, this case presents a federal question and Petitioner's Motion to Remand this case to state court must be denied.

## II. STATEMENT OF FACTS

Petitioner's Petition and supporting documents allege the following facts:

### A. HUD exercises control over certain aspects of the Cooperative's affairs such that the affairs of the Cooperative are subordinate to the Rights of the Federal Housing Administration

The "Cooperative" is a non profit housing corporation subsidized by HUD under the United States Housing Act, 42 U.S.C. §1437, et. seq. (the Act). **Decl of Kam, Exhibit A, Article 19 of Occupancy Agreement at p. 13.**

By implementing the United States Housing Act, Congress established a framework to disburse federal funds to assist in building and operating housing projects for low and moderate income families.

Subsidized cooperatives like MLK-MG sign a "Regulatory Agreement" with HUD. HUD insures the mortgage on the project. Should the development default on its mortgage payments, HUD could be required to pay the full amount owing to the mortgagor and would then own the project. Because it takes this risk, HUD exercises control over certain aspects of the corporation's affairs. For example, HUD sets income limits for co-op residents to ensure that the project serves those families of modest means it was designed for, and places restrictions on family size and composition, carrying charges, methods of operation and sale of the project. **Decl of Kam, Exhibit A, Article 19 of Occupancy Agreement at p.**

RESPONDENT'S OPPOSITION TO MOTION TO REMAND

**13; Exhibit C, Section B, at page 2.**

Respondent Board operates the "Cooperative" under "authority defined and limited by" three key documents: 1) the Bylaws of the nonprofit corporation, 2) the Regulatory Agreement with the U.S. Department of Housing and Urban Development ("HUD"), and 3) the Occupancy Agreement." **Decl of Kam, Exhibit B at page 2; Exhibit C at page 1.**

Pursuant to a Section 8 Housing Assistance Payment Contract entered into between the "Cooperative" and HUD, "eligible" low and moderate income families are required to pay no more than one-fourth of their income for rent with the balance paid by the federal government/HUD.

HUD exercises control over the Cooperative's operations and the affairs of the Cooperative are subordinate to the Rights of the Federal Housing Administration:

> The management, operation and control of the affairs of the Corporation <u>shall be subject to</u> the rights, powers, and privileges of the Federal Housing Administration pursuant to a Regulatory Agreement between the Corporation and the Federal Housing Administration. The Corporation is bound by the provisions of the Regulatory Agreement which is a condition precedent to the insurance of a mortgage of the Corporation on the project.. **Decl of Kam, Exhibit N, Article VII, Section 1. Rights of the Federal Housing Administration at p. 23.**

HUD's pervasive control over the Cooperative's operations, including Section 8 Housing Assistance Payments provided to the Cooperative's Members, includes but is not limited to:

- HUD requires that all Members enter into an "Occupancy Agreement" (i.e. lease) on a standard form provided/prepared by HUD (**Decl of Kam, Exhibit B, p. 14**) that outlines the responsibilities of shareholders and the corporation (**Decl of Kam, Exhibit C, p. 2**) and can only be terminated in accord with HUD Regulations, other laws and the terms of the Agreement. **Decl of Kam Exhibit A, Article 37 at p. 19.**

- The "carrying charges" (defined as "rent" by Title 24 Code of Federal Regulations §982.619(b)) payable by a member for a unit is calculated on a HUD Form 50059 and any amounts as adjusted by HUD. **Decl of Kam Exhibit A, Occupancy Agreement**

-- 3 --

**Article 29 "Housing Assistance Payments", p. 15.**

- HUD approves "carrying charges"/rents a part of which on most units is paid by the Federal Government. **Decl of Kam Exhibit C, "Carrying Charges, p. 2-3, Decl of Kam Exhibit A, p. 6.**

- HUD requires that (1) housing units be assigned according to the size of the household **(Decl of Kam Exhibit A Article 4, p. 6)** and that (2) only persons listed on a member's income certification (forms 3131 and 3132) may live in a unit. **Decl of Kam, Exhibit B, "Additional Occupants", p. 5.**

- HUD requires that, if applicable, only authorized occupants listed on the Certification and Recertification of Member Eligibility (HUD Form 50059) reside in the dwelling unit **Decl of Kam Exhibit A, Occupancy Agreement, Article 3, "General Use Restrictions" at p. 4.**

- Because a Member's eligibility for Section 8 Housing Assistance Payments is based on his reported income and assets, it is a Member's *material obligation* [1] to *accurately*

---

[1] Article 34 of the Occupancy Agreement provides in part:

...

A.   Member agrees that the family disclosure of income, family composition and other eligibility requirements shall be deemed substantial and material obligations of his occupancy with respect to the amount of Housing Assistance Payments for which Member is eligible and in determining Member's share of the monthly Carrying Charge.

B.   Member agrees to comply promptly with all requests by the Corporation or HUD for information and certifications concerning the total carrying charge family income of the Member, the composition of the Member's family and other requirements for occupancy.

C.   Member agrees to report immediately in writing to the Corporation if any household Member moves in or out of the unit and an adult Member off the household who was reported as unemployed on the most recent certification or recertification (HUD 50059) obtains employment. If the Member submits false information on any certification or recertification or request for an income interim adjustment or does not report interim changes in family income or other factors as

RESPONDENT'S OPPOSITION TO MOTION TO REMAND

report his income and assets to HUD so that his carrying charge and assistance payment,

if any, can be accurately computed. [2]

required by this Article, and as a result, is charged a portion of the Carrying Charge less then the amount required by HUD's carry charge formula, the Members agrees to reimburse the Corporation for the difference between the Carrying Charge that should have been paid and the Carrying Charge actually charged.

D.    Member agrees that recertification of income shall be made to the corporation at least once a year.

E.    Member understands that Housing Assistance Payments and Member's share of the monthly Carrying Charge is subject to adjustment to reflect the income changes and agrees to be bound by such adjustment.

F.    Corporation and Member understand that, where by reason of an increase in income, Member is no longer entitled to Housing Assistance benefits, Member may continue to occupy the unit by paying the full monthly Carrying Charges established by the Corporation with the approval of HUD.

G.    Member agrees to reimburse HUD for any excess Housing Assistance Payments made by HUD during any period when an appropriate adjustment or termination of payments was not made for following reasons:

    1.    Member's failure to report an increase in income to the Corporation ...;

    2.    Member's misrepresentation of statements made in Member's application for Housing Assistance Payments, recertification of income or any other information furnished to the Corporation or HUD; or,

    3.    Member's failure to supply information requested by the Corporation or HUD.

**Decl of Kam Exhibit A, Occupancy Agreement at pages 17-18.**

[2] Every year the Corporation will request the Member to report the income and composition of the Member's household and to supply any other information required by HUD for the purposes of determining the Member's carrying charge and assistance payment, if any. The Member agrees to provide accurate written statements in this information and to do so by the date specified in the Corporation's request. The Corporation will verify the information supplied by the Member and use the verified information to re-compute the amount of the Member's carrying charge and assistance payment, if any.

A.    If the Member does not submit the required certification information by the date specified in the Corporation's request, the Corporation may impose the penalties listed below.

    1.    Require the Member to pay the higher, HUD approved market carrying charge ...

    2.    Implement any increase in carrying charge resulting from the

RESPONDENT'S OPPOSITION TO MOTION TO REMAND

- A Member is required to recertify his income once a year so that his carrying charge due for the next 12 months can be calculated (**Decl of Kam Exhibit A, Occupancy Agreement Article 31, p. 16**) and must report any changes to his income between regularly scheduled recertifications. **Decl of Kam Exhibit A, Occupancy Agreement Article 30, p. 15.**

- A Member who fails to recertify when requested will be required to pay the HUD approved fair market "carrying charges" in accord with the administrative procedures set forth in HUD's regulations. **Decl of Kam Exhibit B, "Income Recertification", p. 11.**

- To continue receiving Section 8 assistance, a Member must (1) comply with HUD's income recertification requirements and (2) must be current in his carrying charges. **Decl of Kam, Exhibit B, "Section 8" at page 16.**

- Any Member who submits false information on any application, certification or does not report interim changes in family income, and as a result, is charged a carrying charge less than the amount required by HUD's carrying charge formulas, must **immediately and forthwith upon written demand** reimburse the Cooperative the difference between the carrying charges the Member should have paid and the rent the Member was charged. **Decl of Kam Exhibit A, Occupancy Agreement, Article 33 at p. 17.**

- A Member is in default if he fails to comply promptly with all requests by the corporation or HUD for information and certifications in accordance with the HUD Regulations

recertification processing without providing the written notice otherwise required by Article 35 of this Agreement. **Decl of Kam Exhibit A, Occupancy Agreement Article 30 "Regularly Scheduled Recertifications" at p. 15.**

- 6 -

and/or the corporation's policies.  **Decl of Kam Exhibit A, Occupancy Agreement Article 17, Subsection (J) at p. 12.**

**B.**  **Petitioner applies for and receives Section 8 Housing Assistance Payments without disclosing his assets**

In November 2001, Petitioner and his wife Chong Park (**Decl of Kam ¶ 13:9-10**) moved into the "Cooperative" (**Decl of Kam ¶ 2, Exhibit A to Decl.**) pursuant to a "standard form." Occupancy Agreement prepared by HUD.

Pursuant to a contract between the "Cooperative" and HUD (**Decl of Kam Exhibit A, Occupancy Agreement Article 29 "Housing Assistance Payments" at p. 15**), Petitioner applied for and received Section 8 Housing Assistance Payments from HUD.  Petitioner did not disclose that he owned real property in Illinois during the years 2001-2004 and the value of this asset was not taken into account in determining his eligibility for HUD housing assistance and the computation of his monthly rent, **Decl of Kam ¶ 13:13-16.**

On September 13, 2005, Petitioner was elected to the MLK-MG Board of Directors and was elected to the office Board Treasurer.  **Decl of Kam ¶ 3.**

In 2006, HUD discovered that Petitioner owned property in Illinois worth $355,000 that he had not reported on HUD Form 50059 for the years 2001-2004.  **Decl of Kam ¶ 13:16-18.** On November 13, 2006, Petitioner was notified that based on the value of his property, he owed $9,052 in back rent and could repay the amount owed "over an 18-month period at $503.00 per month beginning December 1, 2006".  **Decl of Kam ¶ 3, Decl of Kam, Exhibit J.**  Petitioner did not pay any portion of the carrying charges due.  **Decl of Kam, Exhibit H, I and K.** [3]

---

[3]    Memorandum to the Board dated February 23, 2007 (**Decl of Kam Exhibit I**) informs that Petitioner had failed to report a second residence (the subject property) and that he "had until February 23, 2007 to produce new appraisals" as they disputed her [property manager's] initial calculations.  Although the property management company had agreed to

**C.  HUD demands that Respondent Board take immediate action.**

On March 5, 2007, HUD issued a letter informing Respondent Board (and the property management company) that Petitioner and Ms. Park "currently owe past due carrying charges of $9,052," that they were in "delinquency" and that Petitioner "can no longer serve on MLK-MG Board of Directors pursuant to the Bylaws which provide that "any Director who becomes more than thirty days delinquent in payment of his carrying charges shall be automatically terminated." [4]   HUD also demanded that the Board take immediate action to bring the project into compliance with the Bylaws.  **Decl of Kam ¶ 6, Exhibit D**

Almost 114 days after first being informed of his arrearage on November 13, 2006, Petitioner tendered the $9,052 due.  **Decl of Kam ¶ 16.** [5]

**D.  Petitioner claims that HUD is wrong.**

Petitioner claims that on March 13, 2007, acting on HUD's "erroneous and unfounded" statements (in HUD's March 5, 2007 letter) (**Decl of Kam Exhibit D**) that he was in arrears in

---

recalculate what was owed based on receipt of yearly appraisals, such appraisals "were never produced." **Decl of Kam Exhibit I**

[4]    Bylaw Article V, Section 5, Removal of Directors, provides for mandatory automatic removal of a member of the Board of Directors who is 30 days delinquent in paying his carrying charges:

"The term of any Director who becomes more than thirty (30) days delinquent
in payment of his carrying charges shall be automatically terminated and the
remaining Directors shall appoint his successor as provided in Section 4, above".
**Decl of Kam Exhibit N at p. 18.**

[5]  Petitioner contends that HUD's statements (set forth in HUD"s March 5, 2007 letter) that he owed overdue "carrying charges" due to his failure to report an asset worth over $300,000 when applying for and receiving Section 8 housing assistance and HUD's invoking of the Cooperative Bylaw provision providing for his "automatic removal" from the Board because of the arrearage were "erroneous and unfounded".  He also claims that he was removed by a faction of the Board who disagreed with his analysis of a refinancing proposal for rehabilitation of the property's condition.  **Decl of  Kam ¶ 16.**

RESPONDENT'S OPPOSITION TO MOTION TO REMAND

carrying charges due and was no longer eligible to sit as a Director, Respondent Board voted 3-2 to remove him as Director and Treasurer. **Decl of Kam ¶ 7, 11.** On March 15, 2007, Petitioner conveyed title to the real property to his children. **Decl of Kam ¶ 13: 21-23**

## III. LEGAL ARGUMENT

### A. <u>Removal to federal court is appropriate because the federal court has jurisdiction to resolve disputes arising from HUD's control of operations at the Cooperative.</u>

The district courts shall have original jurisdiction of all civil actions arising under the under the Constitution, laws, or treaties of the United States. 28 U.S.C.A. § 1331. A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a).

The dispute in the instant matter arises under federal law because, on the face of his application, Petitioner contests a federal agency's determination that, in accordance with the United States Housing Act of 1937, 42 USC §1437, et. seq., Petitioner must be removed from the Martin Luther King, Jr.-Marcus Garvey Square Cooperative's Board of Directors.

Because a United States district court has original jurisdiction over a civil action arising under the National Housing Act, Respondent properly removed this case to federal court. As demonstrated herein, Respondent's has met its burden of establishing that removal is proper. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir.1988).

### 1. **Petitioner's claim, as articulated in his Application, challenges a federal agency decision.**

Removal to federal court is appropriate in this matter because the Department of Housing and Urban Development (HUD) controls operations at the Cooperative and Respondent Board is required to comply with HUD directives in order to maintain funding so that it can continue to provide housing to the low income families the program is designed to benefit. The fact that

Respondent Board took the final action (a vote) in a sequence of events leading to Petitioner's removal does not change the fact that Respondent Board was, throughout the time period in question, merely acting as a conduit for the United States Department of Housing and Urban Development (HUD). Accordingly, a determination of whether Petitioner is rightfully entitled to reinstatement is wholly dependent on a court's interpretation of HUD's guidelines for nonprofit housing corporations, like the Martin Luther King, Jr.-Marcus Garvey Square Cooperative, which are wholly subsidized by the federal government under the United States Housing Act of 1937, 42 USC §1437, et. seq.

In a similar case involving residents of a cooperative housing project organized under the National Housing Act, the court found jurisdiction pursuant to the federal question statute and Mandamus Act, acknowledging that the cooperative's operations were largely controlled by federal law. *Bloodworth v. Oxford Village Townhouses, Inc.*, 377 F Supp 709 (1974). In *Bloodworth*, cooperative housing project's residents brought an action seeking to preclude an increase in monthly carrying charges (rent). In articulating its basis for finding federal court jurisdiction, the court reasoned that the purpose of the National Housing Act is to encourage private enterprise to develop, construct and operate decent housing for poor families. This purpose is accomplished by making federal mortgage insurance, interest subsidies and tax benefits readily available to potential mortgagors. In return for these benefits, however, the federal government (acting through HUD), plays an active role in the development and continued operations of the cooperative housing project, setting out detailed conditions which a mortgagor must fulfill in order to maintain federal assistance throughout the life of the mortgage.

The *Bloodworth* court determined that federal jurisdiction was appropriate because it recognized that any decision made by the housing cooperative was, in large part, dictated by federal law. In the instant matter, Respondent's decision regarding Petitioner's removal from the Board was similarly dictated by federal law. Accordingly, federal jurisdiction is appropriate in this matter.

**2.    Petitioner's claim turns on the validity of a federal agency determination.**

In support of the Motion To Remand, Petitioner contends that federal courts only look to

a Plaintiff's pleading to determine removability. Petitioner is wrong.

The absence of a federal claim on the face of the Application is not dispositive

There is another longstanding, variety of federal 'arising under' jurisdiction" which the Supreme Court has "recognized for nearly 100 years," [6] namely, that "in certain cases, federal question jurisdiction will lie over state-law claims that implicate significant federal issues" (*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 312 (2005)) such as where the state claim "necessarily depend(s) on resolution of a substantial question of federal law (*Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983)) or "where the vindication of a right under state law necessarily turns(s) on some construction of federal law." *Merrill Dow Pharmaceuticals, Inc. v. Thomson*, 478 U.S. 804, 808 (1986).

> "This doctrine captures the commonsense notion that a federal court ought to
> be able to hear claims recognized under state law that nonetheless turn on
> substantial questions of federal law, and thus justify resort to the experience,
> solicitude, and hope of uniformity that a federal forum offers on federal issues."
> *Grable, supra*, at p. 312.

See also *Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.*, 986 F.2d 476 (Fed. Cir. 1993), in which a court determined that federal jurisdiction was appropriate to resolve a state law claim brought by a competitor for business disparagement where a patent owner told a competitor's customers that the competitor's product infringed on the patent owner's patent. The Court found that the claim "arose under" federal patent law because the competitor's right to relief depended on the existence of patent infringement, which presented a "substantial question of patent law." *Additive, supra*, 986 F.2d at 479.

Accordingly, even if this Court believes that California case law (e.g. California

---

[6]   See *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921), wherein federal jurisdiction was upheld where a shareholder sued to enjoin a corporation from purchasing federal bonds on the ground that the statute authorizing issuance of the bonds was unconstitutional because the constitutionality of a federal statute was drawn into issue and involved a federal obligation.

- 11 -

Corporations Code) recognizes Petitioner's claim that he was improperly removed from the Board, this Court may still determine that federal jurisdiction is appropriate because Petitioner's potential reinstatement turns on a substantial question of federal law – the propriety of HUD's directive and the Board's adherence to the same.

**B.    Removal to federal court is appropriate because Petitioner's claim implicates a substantial federal interest which a federal court may evaluate without upsetting the balance between federal and state law.**

In *Grable, supra,* the Supreme Court found federal jurisdiction because, as in the instant matter, Plaintiff's claim implicated a federal interest which was actually disputed and substantial and which a federal forum could entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.

In *Grable, supra,* the IRS notified plaintiff by mail that it had seized his land to satisfy a federal tax delinquency in violation of 26 U.S.C. § 6335 which required notification by personal service. *See id.* at 310. After the IRS sold the property to the defendant, Plaintiff filed a quiet title action in state court alleging that the IRS's failure to comply with federal law by notifying him by mail rather than by personal service rendered the tax deed void. Defendant removed the case to federal court asserting federal question jurisdiction.

The *Grable* court denied plaintiff's motion to remand the case to state court on the ground that the notice requirement provided by the Internal Revenue Code implicated substantial federal interests for purpose of removal jurisdiction. *Id..* 314. In its decision, the Court articulated the following three part test for determining federal jurisdiction: "[D]oes a state-law claim (1) necessarily raise a stated federal issue, (2) actually disputed and substantial, (3) which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities?" *Id.* at 314.

RESPONDENT'S OPPOSITION TO MOTION TO REMAND

Applying this test, the Supreme Court found that, (1) a federal issue was in dispute because the parties disputed the meaning of the notice provision (See *id.* at 314); (2) the question of whether the plaintiff was given notice as defined by the federal law was necessarily raised as an essential element of the plaintiff's quiet title claim; and (3) the meaning of the tax provision at issue was an important issue of federal law which "sensibly belong[ing] in federal court."

The *Grable* Court further reasoned that the "government has a strong interest in the 'prompt and certain collection of delinquent taxes'" and that resolution of the notice provision would be important to the IRS's ability to satisfy its claims from the property of delinquents and sell the property to purchasers. Moreover, the government had an interest in a federal forum to satisfy its claims over the property of tax delinquents and buyers and delinquents may find it valuable to come before judges accustomed to federal tax matters and that federal jurisdiction would not upset the federal and state division of labor, because "it will be the rare state title case that raises a contested matter of federal law, federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor." *Id.*

Application of the *Grable* test to the present case compels the conclusion that Petitioner's case is properly before this Court. First, a significant federal issue is in dispute because Petitioner disputes HUD's authority to assess carrying charge arrearages against him pursuant to federal rules and regulations. Next, the question of whether the HUD's findings against Petitioner were "erroneous and unfounded" as defined by the federal law is a necessary element of plaintiff's claim given Petitioner's admission that Respondent Board "acted" on HUD's "erroneous and unfounded" statements in removing him from the Board. Finally, the meaning and extent of HUD's authority to manage and operate the Cooperative is an important issue of federal law which "sensibly belongs in federal court" especially where HUD exercises extensive

- 13 -

RESPONDENT'S OPPOSITION TO MOTION TO REMAND

management and control over the "Cooperative" and the "Cooperative's" ability to manage and operate itself is subordinate to the rights of the Federal Housing Administration.   With regard to this last prong, federal jurisdiction does not upset the federal and state division of labor because determination of this case in a federal forum allows the matter to present before a judge accustomed to federal public housing and HUD matters.   The foregoing is especially true where the Petition and supporting documents reveals that this case relates to promulgation, furtherance and management of a program that is so pervasively governed by federal law, and subordinate to state and contractual claims, that only a federal forum can best resolve the issues presented.

As in *Grable*, the federal court in the instant matter has a strong interest in the resolution of disputes which fundamentally request review of federal agency action based on its rules and regulations.  Resolution of this dispute is important to HUD's ability to continue to joint venture with private interests to provide low and moderate income housing to the public.  Moreover, the Cooperative has an interest in a federal forum resolving claims over the propriety of HUD's management and control over its operations and invocation of its Bylaws in assuring compliance with federal law so as not to jeopardize its subsidy.

**C.  Removal to federal court is appropriate because federal courts have historically exercised federal question jurisdiction over cases which present issues arising under the National Housing Act.**

Cases involving disputes arising under the National Housing Act are typically resolved in federal Court.  For example, in *Keller v. Kate Maremount Foundation, et. al.,* 365 F. Supp. 798 (1972), tenants in a publicly financed housing project under a program established by the Housing Act of 1961 and subsidized by HUD filed suit seeking relief on the theory that rent increases were approved by HUD in violation of due process.  The court considered the program under which the project was established and the statute and regulations that require HUD to regulate rents.  The court noted that there was sufficient federal action to invoke the due process clause – the Federal Housing Administration pays landlords an attractive subsidy, HUD must approve all rents, and HUD sets income limits for families seeking to live in the projects.  *Id.* at

RESPONDENT'S OPPOSITION TO MOTION TO REMAND

p. 801.

Similarly, in *Geneva Towers Tenants Organization v. Federal Mortgage Investors,* 504 F2d 483 (1974), the court found that facts and circumstances disclosed sufficient federal action and government involvement in the administration of publicly financed housing projects to subject the activities of the landlords to the Fifth Amendment. Private investors such as the non-profit corporation owners were engaged in a joint undertaking with the federal government to provide housing to low and moderate income families and were thus subjected to an elaborate and pervasive body of government regulations. *Id.* at 488.

As evidenced by the *Keller, Geneva,* and *Bloodworth, supra,* decisions, federal courts have historically exercised federal question jurisdiction over cases which present issues arising under the National Housing Act. The present case is no exception. Plaintiff's claim turns on whether HUD's action was appropriate, a federal question.

**D.   The crux of Petitioner's claim is inextricably linked to a federal agency decision.**

To be blunt, "all roads lead to HUD," its rules and regulations, and federal agency action relating to the Petition at issue:

- Petitioner was required to abide by the terms of the HUD standard form Occupancy Agreement he entered into with the Cooperative, which included his agreement to abide by HUD application and recertification requirements, Cooperative Bylaws, etc.

- Under the "Cooperative's" Bylaws, HUD exercises control over the Cooperative's operations. The management, operation and control of the Cooperative are subject to and subordinate to the Rights of the Federal Housing Administration.

- Pursuant to Article V, Section 5, of the Cooperative Bylaws, the term of any Director who becomes more than thirty (30) days delinquent in payment of his carrying charges

shall be automatically terminated, a Bylaw approved by HUD.

- A Member's eligibility for Section 8 Housing Assistance Payments and his "carrying charges" are determined yearly under HUD guidelines on HUD Form 50059.

- Petitioner applied for and received Section 8 Housing Assistance Payments pursuant to a contract between the Cooperative and HUD for the years 2001-2004.

- Petitioner failed to disclose his ownership of real property as required to determine his eligibility for Section 8 Housing Assistance Payments and computation of carrying charges for the years 2001-2004, in violation of HUD reporting and recertification requirements under the federal scheme and the relevant Occupancy Agreement.

- In 2006 HUD discovered that Petitioner had not reported his ownership of property when applying for Section 8 Housing Assistance Payments during the years 2001-2004.

- Petitioner's failure to report his ownership of property resulted in his being liable for arrearages for carrying charge that would have otherwise been due if he had reported his real estate holdings for the years 2001-2004.

- On November 13, 2006 Petitioner was informed that he owed $9,052 in overdue carrying charges for the years 2001-2004.  Although under the Occupancy Agreement overdue arrearages were due immediately, Petitioner was provided the option of paying the amount monthly over an 18 month period commencing on December 1, 2006 and he still made no effort to pay in violation of HUD regulations and the Occupancy Agreement.

- Petitioner did not make any payments toward his overdue carrying charges on December 1, 2006, by December 31, 2006 or prior to March 5, 2007 and was therefore, thirty (30) days late as of December 31, 2006. .

- That under Article V, Section 5, of the Cooperative Bylaws Petitioner's tenure as a Board

RESPONDENT'S OPPOSITION TO MOTION TO REMAND

Member ended on December 31, 2006, thirty (30) days after Petitioner failed to pay any portion of the back rent due on December 1, 2006.

- On March 5, 2007 HUD sent a letter to Respondent Board informing that Petitioner was in arrears of carrying charges due to his failure to report his ownership of property during the years 2001-2004, that Petitioner was delinquent and that said delinquency rendered him ineligible and automatically removed from Respondent Board and mandates that the Cooperative comply with its Bylaws.

- HUD did not declare Petitioner to be in "delinquency" and "automatically removed" from Respondent Board until Petitioner was almost 120 days overdue in assessed charges and Petitioner made not made any effort to repay any of the monies due.

- Petitioner contends that HUD's statements were "erroneous and unfounded" (HUD was "wrong") when it declared him delinquent in March, 2007 because he was not late, was at most nine days late and the amount charged to him was "too large an amount." Nonetheless:
    - Petitioner paid the full amount demanded albeit 114 days late.
    - Petitioner never sought judicial, or any, review of HUD's determination and assessment while he now indirectly argues that HUD "was wrong" – which forms the true basis of his claim that he was wrongfully removed from the Board.

- Petitioner alleges that Respondent Board was acting on HUD's "erroneous and unfounded" statements that he was arrears in his payment of carrying charges (rent as defined by applicable federal regulations) when it removed him from the Board.

Despite Petitioner's cunning attempt to characterize this matter as one of state law, his own evidence demonstrates that the true basis of his claim is that Respondent Board wrongfully acted on HUD's "erroneous and unfounded" statement that he was "delinquent" in his carrying

RESPONDENT'S OPPOSITION TO MOTION TO REMAND

charges and that such "delinquency" "automatically removed" him from Respondent Board pursuant to the Cooperative Bylaw.

Thus, based on Petitioner's allegation that HUD's findings were "erroneous and unfounded," and Respondent Board acted on HUD's "erroneous and unfounded" statements in removing him from the Board, resolution of Petitioner's claim requires a determination as to whether HUD "was wrong." Given the federal statutory scheme under which the "Cooperative" operates, Petitioner's claim presents a federal question and/or requires resolution of issues of construction of federal law that implicate significant federal issues, including but not limited to, (1) HUD's authority to and the propriety of its determination that Petitioner was delinquent in carrying charges (computed pursuant to HUD guidelines); (2) HUD's authority to invoke the mandatory Cooperative Bylaw provision requiring a delinquent Director's automatic removal from Respondent Board; (3) HUD's authority to direct Respondent Board to act pursuant to the Cooperative's Bylaw; and (4) Respondent Board's duty to adhere to HUD's directives.

To evaluate these issues and essentially determine whether, as Petitioner now alleges, "HUD was wrong", a federal court must consider Petitioner's Application, nd Petitioner's Motion to Remand this case to state court must be denied

E. **Petitioner is not entitled to attorneys' fees in the event this court remands this case because Respondent Board had an objectively reasonable basis for removal of this case to federal court.**

The Supreme Court recently instructed that attorney's fees in removal cases are not to be awarded as a matter of course: "[A]bsent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, (2005).

In the instant matter, there was adequate foundation for a removal to federal court. Quoting Petitioner's own Motion to Remand,

RESPONDENT'S OPPOSITION TO MOTION TO REMAND

"...[Petitioner] did attach (to his Petition) a letter written on March 5, 2007, by a federal employee, Angela Corcoran, the Acting Director of the Operations Division of the U.S. Department of Housing and Urban Development, San Francisco Regional Office ("HUD"). Corocoron's letter said that she had been told that Mr. Kam was delinquent in his rent to the Coop. Based upon this...report, she then offered her opinion that Mr. Kam "can no longer serve on the Board." (Petitioner's Memorandum, page 3, lines 14-20.)

Contrary to Petitioner's assertion that, "Even a cursory reading of [his] Petition reveals that this Court has no original jurisdiction," Petitioner's own moving papers actually acknowledge the significance of HUD's directive to the Board. Petitioner's moving papers also concede the fact that Respondent only made its decision to remove him after receiving a letter from HUD advising that specific action.

Furthermore, where, as here, Respondent's removal is not "wrong as a matter of law," Petitioner is not entitled to attorney's fees and costs. See *Balcorta v. Twentieth Century-Fox Film Corp.* 208 F3d 1102, 1106 n.6 (9th cir 2002) (awarding attorney's fees "when a defendant's removal, while "fairly supportable", was wrong as a matter of law).

Accordingly, should the Court remand this case, Petitioner is not entitled to attorneys' fees because Respondent Board had an objectively reasonable basis for removal to federal court and was not wrong as a matter of law.

## IV.    CONCLUSION

As demonstrated herein, there is sufficient basis for federal court jurisdiction.

Petitioner's Petition, supporting Declarations and evidence compel the conclusion that Petitioner's allegations are based on the fundamental claim that Respondent Board acted on HUD's "erroneous and unfounded" statements and directive that his delinquency in carrying charges in violation of federal law and regulations resulted in his automatic removal from the Board pursuant to Cooperative Bylaws.

Petitioner should not be allowed to use the judicial system to do an "end-run" on HUD's determination that the Board legitimately relied upon when removing Petitioner from the Coop's Board of Directors. Federal laws both govern and are incorporated into the Coop's Bylaws.

- 19 -

1  Petitioner and his counsel's argument that HUD had no involvement in this matter and that

2  federal laws are not at issue is nonsensical.  Contrary to Petitioner's counsel's allegations,

3  Respondent's Notice of Removal was prudent and the right course of action given that this case

4  involves issues of federal law as delineated in Respondent's Notice of Removal.  Thus,

5  Petitioner's Motion to Remand this case to state court must be denied.

6      Should this court remand this case to state court, Respondent Board requests that

7  Petitioner's request for attorneys' fees be denied because Respondent Board had an objectively

8  reasonable basis for removing this case to federal court.

9                    Respectfully submitted,

10  DATED:  September 25, 2007        **KAUFMAN DOLOWICH & VOLUCK LLP**

11

12

13  Elizabeth Williams, Esq.
    Attorneys for Respondent MARTIN LUTHER
14  KING, JR.-MARCUS GARVEY SQUARE
    COOPERATIVE BOARD OF DIRECTORS
15

16

17

18

19

20

21

22

23

24

25

26

27

28

RESPONDENT'S OPPOSITION TO MOTION TO REMAND